THE HONORABLE JOHN C. COUGHENOUR

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| DONALD M. DAVIS and BRENDA L. DAVIS, et al., <br><br> Plaintiffs, <br><br> v. <br><br> AMERICAN STATES INSURANCE COMPANY, <br><br> Defendant. | CASE NO. C10-1605-JCC <br><br> ORDER |

This matter comes before the Court on Defendant's Motion for Summary Judgment (Dkt. No. 34). Having thoroughly considered the parties' briefing and the relevant record, the Court finds oral argument unnecessary and grants the motion for the reasons explained herein.

## I. BACKGROUND

Defendant American States Insurance Company ("American States") issued an insurance policy to Plaintiffs Donald and Brenda Davis for a commercial building they own in Tacoma, Washington. During a rainstorm in September 2009, the northeast portion of the building's roof caved in and fell to the ground. (Dkt. No. 18-1 at 2.) Plaintiff Donald Davis retained an engineer, Jesse Binford, to assess whether the building could still be used safely. (Dkt. No. 21-2 at 6.) Mr. Binford's preliminary conclusion was that the building was safe as long as the roof was free of water and snow. (*Id.* at 7.) Mr. Davis then submitted a claim to American States for the damage.

(*Id.*) Mr. Binford was thereafter in contact with American States' claims adjuster, Craig Hempel, regarding the damage to the building. He advised Mr. Hempel that the entire roof would likely need to be replaced because of long-term deflection in the trusses. (*Id.* at 17.)

According to Mr. Hempel's claim file, the fact that Mr. Binford had originally been hired by the Davises raised the prospect of a conflict of interest, and American States therefore concluded that an engineer other than Mr. Binford should be retained to determine the cause and origin of the damage to the building. (*Id.* at 18.) American States hired Pacific Engineering Technologies ("PET"), whose engineer, Michael Smith, performed an inspection and concluded that trusses throughout the roof were sagging, a condition he attributed to "creep,[1] repeated service loads (ponding water and snow) and an inadequate connection (staples and construction adhesive) between the plywood panels and the top and bottom chords." (Dkt. No. 21-3 at 9.) According to Mr. Smith, these factors were particularly acute in the northeast section of the roof, causing the collapse during the September 2009 rainstorm. (*Id.*) Mr. Smith also advised American States that motorized pumps that had been placed on the roof "must be maintained to prevent water from ponding on the roof." (Dkt. No. 21-2 at 21.) He recommended that the building not be used at all if "3 [inches] of snow accumulates on the ground, or if any amount of snow or ice accumulates on the ground with the combination of rain." (*Id.*)

American States agreed to pay under the Plaintiffs' policy for the damage to the collapsed northeast section of the roof, but it denied coverage for repairs to the remainder of the roof, stating that "the roof trusses not involved in the direct collapse damage are not in a state of collapse as described in the policy." (Dkt. No. 18-4 at 40.) American States solicited bids from the Davises' contractor and another contractor to determine the cost of the covered damage. The Davises decided to repair the rest of the roof at their own expense because of the ongoing risk of

---

[1] Mr. Smith defines "creep" as the "time-dependent deformation of a loaded wood member . . . due to the constant self-weight of the structure," which "can create a permanent sag in the roof member." (Dkt. No. 21-3 at 8.)

collapse due to the sagging trusses.

Plaintiffs filed this action in August 2010, alleging breach of contract, bad faith, and violations of the Consumer Protection Act and the Insurance Fair Conduct Act. (Dkt. No. 3-1.) In February 2012, the Court denied Plaintiffs' motion for partial summary judgment on the denial of coverage. Defendant now moves for summary judgment on all claims.

## II. DISCUSSION

Summary judgment is proper "if the movant shows that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The Court must view all evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-50 (1986). A genuine issue of material fact exists where there is sufficient evidence for a reasonable fact finder to find for the nonmoving party. *Id.* at 248. Where a party fails to make a showing sufficient to establish an essential element of a claim or defense, summary judgment is proper. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

### A. Breach of Contract

Washington courts construe insurance policies as contracts, with the policy being given a "fair, reasonable, and sensible construction as would be given to the contract by the average person purchasing insurance." *Weyerhaeuser Co. v. Commercial Union Ins. Co.*, 142 Wash. 2d 654, 666 (2000). If the language of the policy is clear and unambiguous, it must be enforced as written, and a court "may not modify it or create ambiguity where none exists." *Id.* Any ambiguity is resolved against the insurer and in favor of the insured. *Id.* A clause is ambiguous when it can reasonably be interpreted in two different ways. *Id.*

Plaintiffs allege that American States breached its contractual obligation to Plaintiffs by denying coverage for the portion of the roof that had not fallen to the ground. (Dkt. No. 3-1 at 4.) The insurance policy covered collapse only as defined in the following provision:

    a. Collapse means an abrupt falling down or caving in of a building or any part of a

    building with the result that the building cannot be occupied for its intended purpose;
  b. A building or any part of a building that is in danger of falling down or caving in is not considered to be in a state of collapse;
  c. A part of a building that is standing is not considered to be in a state of collapse even if it has separated from another part of the building;
  d. A building that is standing or any part of a building that is standing is not considered to be in a state of collapse even if it shows evidence of cracking, bulging, sagging, bending, leaning, settling, shrinkage or expansion.

(Dkt. No. 21 at 10.) The policy excluded loss or damage caused by "wear and tear"; "corrosion, decay, deterioration, hidden or latent defect"; and "settling, cracking, shrinking or expansion." (*Id.* at 8.)

  American States argues that the above policy language unambiguously excludes the roof of the Davises' building other than the collapsed northeast section. The Court agrees. There is no dispute that the remainder of the roof did not abruptly fall down or cave in. (*See* photographs, Dkt. No. 18-4 at 24-30.) Despite evidence that the trusses were sagging, the remaining roof was in place and was therefore excluded, even if it was in danger of falling down.

  Plaintiffs offer little argument in response to Defendant's motion as to this claim, other than to note that the Court, in ruling on Plaintiffs' motion for partial summary judgment, concluded that an issue of fact exists as to whether the building could be used for its intended purpose. (Dkt. No. 37 at 2; Dkt. No. 32 at 4.) That ruling, however, does not preclude summary judgment, because the Court did not reach the issue American States has now placed before it: whether the policy definition of collapse unambiguously excluded the remainder of the roof. The Court concludes that it did. Regardless of whether the building could be used for its intended purpose, clauses b., c., and d. of the above definition clarify clause a. and leave no room for uncertainty as to whether the roof was covered—it was not. Plaintiffs have identified no other basis in the policy for concluding that the roof or sagging trusses were covered, and the Court therefore concludes that the breach of contract claim fails.

**B. Bad Faith**

An insurer owes to its policyholder a duty of good faith, the violation of which may give rise to an action in tort for bad faith. *Truck Ins. Exch. v. Vanport Homes, Inc.*, 147 Wash. 2d 751, 765 (2002). In order to establish bad faith by an insurer, an insured must show that the insurer's breach of the insurance contract was unreasonable, frivolous, or unfounded. *Kirk v. Mt. Airy Ins. Co.*, 134 Wash. 2d 558, 560 (1998). Whether an insurer acted in bad faith is a question of fact that the insured bears the burden of proving. *Smith v. Safeco Ins. Co.*, 150 Wash. 2d 478, 486 (2003). Where an insured claims that an insurer denied coverage in bad faith, the insured must present evidence that the insurer acted unreasonably. *Id.* Summary judgment in favor of the insurer is proper "if reasonable minds could not differ that its denial of coverage was based upon reasonable grounds." *Id.*

Plaintiffs assert several grounds for their bad faith claim. First, they argue that American States denied coverage in bad faith because it placed its own interests above those of the Davises, and because the denial "could have put people at risk." (Dkt. No. 37 at 8.) The Court, however, has already determined that American States' denial of coverage for the non-collapsed portion of the roof was reasonable given the policy definition of collapse. Thus, Plaintiffs have not shown that the denial of coverage was incorrect, let alone in bad faith. *See Rizzuti v. Basin Travel Serv. of Othello, Inc.*, 125 Wash. App. 602, 622 (2005) (reasonable basis for denying coverage constitutes a complete defense to any claim that the insurer denied coverage in bad faith).

Second, Plaintiffs argue that American States "terminated" Mr. Binford in order to "silence him" and enable the hiring of an engineer who would reach a conclusion more beneficial to American States. (*Id.* at 3.) Plaintiffs have presented no evidence in support of this allegation, which amounts to speculation. Nonetheless, setting aside this absence of evidentiary support, Plaintiffs have not shown that Mr. Binford's assessment of the damage was more favorable to Plaintiffs. Even if Mr. Binford did advise Mr. Hempel that the roof was in an

"imminent state of collapse" as Plaintiffs allege (*see id.*), that still would not have brought the roof within the above policy definition of collapse. Similarly, Mr. Binford's recommendation that the trusses be replaced did not mean that any damage to the trusses was covered under the policy. Plaintiff's allegation regarding Mr. Binford is therefore immaterial.

Third, Plaintiffs allege that the amount American States paid for repairs to the covered portion of the roof was unreasonably low. The parties agree that American States solicited bids for repairing the collapsed section from two contractors. Sterling Group's bid was approximately $56,000, while Belfor's bid was approximately $30,000. (Dkt. No. 35-1 at 9-10.) American States paid Plaintiffs for the covered loss based on the bid from Belfor. According to Plaintiffs, American States did so without sufficiently investigating the differences between the bids. (Dkt. No. 37 at 3.) As Defendant notes, however, Sterling Group informed American States that it probably would not perform the repairs if asked because of the condition of the remaining roof. (Dkt. No. 35-1 at 9.) Given that Plaintiffs elected to proceed with replacing the entire roof, not just repairing the collapsed section, American States paid for covered loss based on the bid from the contractor who would have performed the repairs and who offered to do it at a lower cost. American States also paid Plaintiffs for loss of rental income based on how long Belfor estimated the repairs would have taken—two weeks, as opposed to the longer period during which Plaintiffs lost use of the building because they chose to replace the entire roof. (Dkt. No. 35-1 at 22.) On this record, reasonable minds could not conclude that American States' actions were unreasonable, frivolous, or unfounded. Rather, its actions were specifically founded on Belfor's estimates.

Finally, Plaintiffs allege that American States destroyed an email chain that was pertinent to their claim, suggesting bad faith. (Dkt. No. 37 at 4.) The Court already addressed this issue in ruling on Defendant's motion for a protective order. It concluded that the record reflected a misunderstanding about the nature of particular communications from the claim file that American States produced in discovery. (Dkt. No. 39 at 5.) Mr. Hempel clarified the issue by

submitting a declaration stating that the communications were, in fact, complete. Plaintiffs, by contrast, have presented no evidence of spoliation, and the Court rejects this allegation as a basis for Plaintiffs' bad faith claim.

Plaintiffs have failed to present evidence that American States' actions were unreasonable, frivolous, or unfounded. The Court therefore concludes that summary judgment on Plaintiffs' claim for insurance bad faith is warranted.

### C. Violation of Consumer Protection Act

To prevail on a claim under the Washington Consumer Protection Act (CPA), RCW 19.86, *et seq.*, a plaintiff must show: (1) an unfair or deceptive act or practice (2) in trade or commerce, (3) which affects the public interest and (4) injured the plaintiff's business or property, and (5) that the unfair or deceptive act complained of caused the injury. *Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co.*, 105 Wash. 2d 778, 784-85 (1986). An insurer's breach of its duty of good faith constitutes a *per se* violation of the CPA. *Moratti ex rel. Tarutis v. Farmers Ins. Co. of Wash.*, 162 Wash. App. 495, 511 (2011).

Plaintiffs argue that American States violated the CPA by virtue of the alleged breach of its duty of good faith to Plaintiffs. (Dkt. No. 37 at 6-7.) Plaintiffs offer no independent grounds for their CPA claim, and as the Court has concluded that the bad faith claim is without merit, summary judgment is likewise appropriate on the CPA claim.

### D. Violation of Insurance Fair Conduct Act

Granting summary judgment on the bad faith claim similarly mandates that summary judgment be granted on Plaintiffs' claim under the Insurance Fair Conduct Act (IFCA), RCW 48.30.010, *et seq.* An insurer who unreasonably denies coverage or a payment of benefits violates the IFCA. RCW 48.30.015. The Court has concluded that American States did not unreasonably deny coverage under Plaintiffs' policy, and the IFCA claim therefore fails.

## III. CONCLUSION

Plaintiffs have failed to make a sufficient showing as to essential elements of their claims

against Defendant. Defendant's motion for summary judgment (Dkt. No. 34) is therefore GRANTED.

DATED this 5th day of June 2012.

John C. Coughenour
UNITED STATES DISTRICT JUDGE